Mark COPPEDGE, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17065.

United States Court of Appeals
District of Columbia Circuit.

Argued June 22, 1962.

Decided Nov. 15, 1962.

Fahy, Circuit Judge, dissented.

Mr. Bennett Boskey, Washington, D. C. (appointed by this court), for appellant.

Mr. Arnold T. Aikens, Asst. U. S. Atty., for appellee. Messrs. David C. Acheson, U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., at the time of argument, also entered appearances, for appellee.

Messrs. Archibald Cox, Sol. Gen., Herbert J. Miller, Jr., Asst. Atty. Gen., Miss Beatrice Rosenberg and Mr. Sidney M. Glazer, Attys., Dept. of Justice, were on the brief for the United States, filed in the Supreme Court in Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21, which was also considered by the court in this case.

Before FAHY, DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Appellant was first convicted in December 1958[1] on the first ten counts of an indictment; these counts being one for housebreaking, one for larceny and eight counts of forging, uttering and interstate transportation of eight stolen money orders. On appeal this court granted a new trial because of newspaper articles of two local Washington newspapers[2] relating to the trial.

Before the second trial the defense moved to dismiss the indictment on the ground it was procured by fraud through perjured testimony of Clarence Thompkins. The supporting papers consisted of a paper entitled "Affidavit With Acknowledgement," a letter prepared by a third person and purportedly signed by Clarence Thompkins, two "statements" of fact prepared by a person unknown purporting to be statements of Clarence Thompkins but not signed by him. The paper entitled "Affidavit With Acknowledgement" was signed with the name "Clarence Thompkins" but not acknowledged. No effort was made to prove the signature as genuine. The briefs in the Supreme Court proceedings,[3] on which we act in this case, fail to make clear that the "affidavit" referred to was not in fact an affidavit and the description of Thompkins as "affiant" by trial counsel was grossly inaccurate. In essence the various statements, all attributed to Thompkins, purported to recant the testimony which he gave to the Grand Jury which indicted Coppedge, Thompkins and one Artis as co-defendants. In the course of the hearing on the motion attacking the indictment, appellant's counsel stated that Clarence Thompkins was available in a cell in

---

1. In July 1958, two co-defendants, Artis and Thompkins, entered guilty pleas and were serving their sentences when appellant was tried.

2. These articles "included statements that Clarence Thompkins [a potential witness against defendant] was deathly afraid of Coppedge and that Coppedge had once pistol-whipped Thompkins' brother" when Thompkins was present. The press stories also related statements made in proceedings held out of the presence of the jury that Coppedge was serving a prison term for the assault with a deadly weapon on Thompkins' brother and that protection of Clarence Thompkins, the potential witness, could not be guaranteed.

In the opinion granting a new trial this court noted also, "The jury observed the dramatic scene in which a witness [Thompkins] on two separate occasions refused to be sworn and refused to take the stand despite the repeated and peremptory directions of the court. They learned that the witness was in mortal terror of Coppedge * * * that Coppedge was a vicious criminal, already serving a prison term for violence." Coppedge v. United States, 106 U.S.App. D.C. 275, 272 F.2d 504 (1959).

3. This court denied appellant's motion to appeal in forma pauperis. The Supreme Court reversed. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L. Ed.2d 21 (1962). Although appellant urged the Supreme Court to decide the case on the merits, it declined and remanded to this court for a hearing on the merits. We act on the briefs filed by the parties in the Supreme Court pursuant to a consent order of this court.

the court building to testify, but he did not call Thompkins as a witness in support of his motion.[4] It should be observed that it was when counsel opened his presentation that he advised the court he intended to rely on the supporting papers "already in the jacket" and that this followed his tangential comment that Coppedge and Thompkins were "available." At that point counsel had no way of knowing what issues Judge McGuire would reach or rely on in ruling on the motion

Judge McGuire first noted in his memorandum opinion that the papers filed constituted "a gratuitous attempt to undo what was done at the time of the Grand Jury proceedings." He passed over this phase with the comment that "much light is shed on an explanation for this eleventh hour renouncement * * * in the opinion filed in Coppedge v. United States, [106] U.S.App.D.C. [275, 272 F.2d 504], decided June 23, 1959." Even while exhibiting doubt about the authenticity and adequacy of the supporting papers he then proceeded to accept them at face value. The District Judge then treated fully the contention that any perjury before a Grand Jury hearing fatally "taints" the indictment and concluded:

"After reading the transcript of the proceedings before the Grand Jury on June 4, 1958 with an eye toward the exclusion of the alleged perjurious testimony of the co-defendant [Thompkins], the Court is satisfied that there was sufficient competent evidence to support the indictment herein challenged."

## (1)

Appellant urges that he was denied a hearing on his motion because Clarence Thompkins, although available, was not heard by the District Judge. But the undisputed facts disclose (a) that a full and complete hearing was granted by Judge McGuire; (b) that appellant failed to tender Thompkins as a witness; (c) that the hearing was followed with a three page memorandum opinion. Appellant's counsel concedes appellant had the burden of proof and this being so he had the obligation to tender to the District Court whatever evidence he relied on. He was as much in control of Thompkins as he was of Coppedge. Both were in custody. He has no more basis for complaining that Thompkins was not heard than to complain that Coppedge was not heard. This was by his deliberate choice. For what it is worth, we note that while multiple notaries and others empowered to administer oaths are available in the court building, assuming counsel was not a notary, appellant's counsel failed to have the "affidavit" of Clarence Thompkins acknowledged and indeed there was no evidence offered that Thompkins ever signed it.[5]

---

4. In opening his presentation, appellant's counsel in District Court said:
"I have made available for the Court this morning, though *I do not intend*, unless it be necessary, to call upon them for testimony, the defendant, Mr. Coppedge, who is with us here, and also Mr. Clarence Thompkins, *who is the affiant* and who is the person whom we alleged implicated Mr. Coppedge improperly.
"I am prone, Your Honor, to rest upon the presentation made in the exhibits *already in our jacket* in the file." (Emphasis added.)
Neither Thompkins nor Coppedge was called as a witness.

5. Judge Prettyman's opinion, discussing the first trial, recites the following:
"In open court, the jury being present, Thompkins refused to take the stand and refused to be sworn. Under repeated questions and at least two mandatory directions from the court, he continued to refuse. The judge ascertained that the witness [Thompkins] had a lawyer, and he directed that the lawyer be called. When the lawyer arrived, and again in open court in the presence of the jury, the trial judge directed Thompkins to be sworn and to take the stand. He again repeatedly refused, despite several peremptory directions of the court. * * * Then, the jury having withdrawn, counsel for Thompkins told the court that the reason Thompkins refused to take the stand was fear. 'I sincerely and honestly believe that Clarence Thompkins is deathly afraid of Mark Coppedge. Mark

# 131

For these reasons we see no occasion to remand the case to the District Court for another hearing to offer additional evidence when appellant was afforded every opportunity to do this before Judge McGuire in December 1959.

### (2)

Appellant also contends that the perjurious testimony of Clarence Thompkins before the Grand Jury "necessarily taints, vitiates and corrupts the indictment." He seems to concede that no holdings of any federal court support his position. In essence he asks us to overrule prior contrary authorities including decisions of the Supreme Court. Judge McGuire held that in a Grand Jury proceeding the government need only produce *some* evidence which would support the indictment and that the presence of other evidence, incompetent or inadmissible for some reason, including its reliability, did not vitiate the indictment. To determine whether the indictment had such support independent of the challenged testimony, the district judge examined the Grand Jury minutes and concluded that, excluding the alleged perjurious testimony, there was sufficient other testimony to support the indictment.

> Coppedge was involved in another incident involving his bother, Charles Thompkins, in which Charles Thompkins was unmercifully beat, his teeth knocked out and he was pistol whipped. Clarence Thompkins saw that happen.' Upon inquiry by the court Thompkins himself refused to say anything." Coppedge v. United States, 106 U.S.App.D.C. 275, 276, 272 F.2d 504, 505 (1959).
> At the time of the second trial Coppedge was serving a prison sentence for assault on Charles Thompkins.

6. The opinion emphasized that an indictment is not vulnerable to attack because some of the evidence presented to the Grand Jury was obtained in violation of the accused's right against self-incrimination, when there is sufficient other evidence which is competent. Cf. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). (A Grand Jury may return a good indictment on the basis of hearsay testimony alone.)

The District Court applied the correct rule of law. In Lawn v. United States, 355 U.S. 339, 349, 78 S.Ct. 311, 317, 2 L.Ed.2d 321 (1958), the Supreme Court announced a very broad rule relating to the sufficiency of evidence supporting an indictment.

> "[A]n indictment returned by a legally constituted nonbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment."

The Supreme Court emphasized the particular character and function of the Grand Jury to enable the government to bring people to trial promptly.[6] The ultimate safeguard for the individual accused is at the trial where rules of evidence exclude incompetent testimony and where a timely motion requires the exclusion of evidence obtained in violation of the accused's constitutional rights.

Thus, even assuming, arguendo, that the witness Thompkins committed perjury before the Grand Jury,[7] the indictment must be sustained if there was

7. By innuendo, unsupported by a scintilla of evidence, appellant hints that the prosecution may have induced the Grand Jury testimony of Thompkins by some promise of reward. Thompkins and Artis entered pleas of guilty. Thompkins was sentenced 1 to 3 years; Artis 4 months to one year and one day. Artis did not appear before the Grand Jury.
   Except to note that this argument is utterly unwarranted on this record, we refrain from extended comment. The only justification advanced for the argument is the unsworn, mislabeled "affidavit" and two unsigned papers of unknown origin filed by appellant in support of his motion to quash the indictment. We have already noted that appellant's counsel failed to take even the simple step of having proved the genuineness of the signature on the "affidavit" or having Thompkins acknowledge it to a notary or other officer.

sufficient competent evidence before the Grand Jury. The record before us now discloses that appellant's counsel was permitted by order to examine the Grand Jury minutes. After making such examination appellant does not argue that the Grand Jury testimony, excluding that of Clarence Thompkins, was insufficient to sustain the indictment but rather urges us to adopt a rule that the presence of *any* incompetent evidence or perjured testimony before a Grand Jury vitiates the entire proceeding and the indictment which results. This contention is, as we have noted, contrary to the clear holdings of the Supreme Court. In view of appellant's position after examining the minutes, no examination of the Grand Jury minutes by us is needed.

■■ The very existence of the institution of the Grand Jury presupposes the possibility that this body may err in issuing an indictment. But so long as the Grand Jury itself is not "tainted" in the sense that it was improperly constituted, or that its members were necessarily biased, its actions, if valid on their face, are valid. Lawn v. United States, supra. The nature of its function, unlike an adversary proceeding, contemplates that it will hear from many sources uninhibited by the strict rules of evidence applicable in a trial and untested by the traditional adversary tools such as cross examination. Obviously public officers are charged with a high duty to screen out unreliable witnesses but the critical and final place to detect perjury is on trial when the witness must face the accused before the world and expose himself to the rigors of cross

examination and other hazards including contempt.

■ It is enough, as Judge McGuire held, that there is *some* competent evidence to sustain the charge issued by the Grand Jury even though other evidence before it is incompetent or irrelevant in an evidentiary sense or even false. The sound basis of this doctrine is vividly illustrated in this case by the fact that in two trials, with the higher standards of proof called for in a criminal case, and where witnesses were subject to cross examination and confrontation, juries believed appellant's guilt beyond reasonable doubt *without hearing testimony from Thompkins*.[8]

(3)

■■ Appellant's contention that the testimony given by the witness Artis at the first trial was inadmissible at the second trial is without merit. It is the established rule in federal courts that testimony given in a former criminal trial is admissible in a retrial of that cause when the witness has become unavailable.[9] The proponent of such evidence has the burden of establishing that the witness is unavailable, in addition to establishing the validity of the document containing the former testimony. Appellant contends that the government failed to do this when it introduced Artis' testimony from the first trial. That contention is conclusively refuted by the record, which shows that Judge Holtzoff asked: "I want to ask you one thing more: Do you question or do you concede Mr. Flannery's statement that this witness is unable to be produced?" In response the

8. In the first trial, Clarence Thompkins was held in criminal contempt for refusing to take the stand and take the oath. We need not concern ourselves here nor do we rely in any degree on the suggestions in Coppedge v. United States, 106 U.S.App.D.C. 275, 272 F.2d 504 .(1959), that Coppedge had placed Clarence Thompkins in "mortal fear" to keep him from testifying against Coppedge.

9. Fed.R.Crim.P. 26; Mattox v. United States, 156 U.S. 237, 240–244, 15 S.Ct. 337, 39 L.Ed. 409 (1895); Christoffel v. United States, 91 U.S.App.D.C. 241, 249–250, 200 F.2d 734, 741–742 (1952), vacated for resentencing, 345 U.S. 947, 73 S.Ct. 868, 97 L.Ed. 1371 (1953); Narum v. United States, 287 F.2d 897 (Ct.Cl. 1960). Cf. West v. State of Louisiana, 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965 (1904).

defense attorney stated " * * * without asking to read the telegram. I certainly accept Mr. Flannery's word. I have no doubt that the witness is unavailable."

Next appellant contends that it was error for the trial judge not to admit a letter purporting to be a recantation by Artis of his testimony at the first trial. The letter was not in Artis' handwriting, but was thought by defense counsel to have been signed by him. It was not dated, not witnessed or sworn. This letter was never actually offered in evidence by the appellant,[10] although counsel and the court engaged in an extended conversation concerning it. The letter was brought to the attention of the trial court when the government was introducing in evidence the former testimony of Artis. The record indicates that Judge Holtzoff seriously considered admitting the letter for impeachment purposes had the defense attempted to introduce it with the proper foundation. Having in mind that a telegram from Artis' doctor which was in evidence with defense consent described Artis as being in a precarious condition of health and suffering "mental deterioration," the need for an adequate foundation for the writing was critical, particularly since there was no intimation as to when the writing was signed, by whom it was prepared, the circumstances of the signing or Artis' mental condition at the time of signing. Certainly the prosecution would have the right to inquire of some witness on these aspects. Even assum-

ing Artis' signature was genuine, much more would have been required under the most liberal concepts of impeachment.

All of these circumstances also indicated the importance and the purpose of an offer of proof as to foundation showing how counsel proposed to prove the time, the circumstances of the writing and its signing. If the letter was of a recent date when the "mental deterioration" might have been an element, the condition of Artis would of necessity be a critical factor and the subject of inquiry. Against this defense counsel neither offered the writing nor made any offer of proof as to foundation. Defense counsel was unable to say where the writing came from but only that it was in the file given to him by prior court appointed counsel.

Appellant contends that the trial judge erroneously refused to disqualify himself from presiding at the second trial. The ground alleged as the basis for disqualification is that the trial judge presided at the first trial and had formed opinions concerning the defendant as a result of that experience. No affidavit of prejudice was filed and we are satisfied that the District Judge acted properly in refusing to disqualify himself.

We have examined appellant's other contentions and find no error that would warrant a reversal of his conviction.

Affirmed.

FAHY, Circuit Judge (dissenting).

I think the court should have permitted the authenticity of the statement

---

10. The statement at page 15 of appellant's brief that appellant "sought to introduce into evidence an undated statement" is not correct. No offer of this letter was ever made. The dissent states that defense counsel made it clear that he desired the letter admitted in evidence. The desire was expressed during a bench conference while the government was presenting its case in chief. We suggest that there is a substantial difference between expressing *desire* as stated above and attempting to offer evidence and obtain a ruling during the presentation of

his own case. The defense was first obligated to establish a foundation for the introduction of the letter and then offer the letter. If government objection was then sustained, the defense would have been entitled to make an offer of proof for the record. Defense did not attempt any of these things but now urges this court to reverse the district court for failing to receive an exhibit never offered and indeed not even identified and marked for tender. The statement of the issue gives the answer.

referred to as the Artis recantation to be determined, as the defense was willing to have done. If authenticity were established, I think the court should have admitted the statement with opportunity given for development of the circumstances of its making, as they related to the question of its weight. The defense several times sought to have the court admit the statement in evidence, if Artis' testimony at the first trial was admitted, as occurred over defense objection. The court several times stated he would not admit the Artis statement, even if signed by Artis, giving as the reason for refusing to do so the fact that the body of the statement was not in Artis' handwriting. It is of course of no significance that the statement was not marked for identification. There was and is no question as to its identity.

I do not consider that Mattox v. United ed States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409, requires exclusion of the Artis statement. Though that decision poses a close problem for us in this case, there is the difference, assuming its authenticity, that the Artis statement was actually signed by Artis. Moreover, it was a complete recantation and of special significance, if authentic, because of the pervading claim that perjury underlay the case against appellant.