**UNITED STATES, Appellant,**

v.

**Gregory V. WASHINGTON, Appellee.**

**No. 7609.**

District of Columbia Court of Appeals.

Argued April 8, 1974.

Decided Nov. 6, 1974.

Harry R. Benner, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry and Richard L. Beizer, Asst. U. S. Attys., were on the brief, for appellant.

Frederick H. Weisberg, Washington, D. C., for appellee.

Before KERN, NEBEKER and PAIR,* Associate Judges.

NEBEKER, Associate Judge:

In this government appeal [1] from an order suppressing the accused's grand jury testimony and dismissing the indictment, we are asked to hold that a valid waiver of rights was made and, in any event, that the indictment should not have been dismissed. We sustain the suppression order insofar as it has operation at a future trial, which we make possible by reversing the order of dismissal.

Appellee was handed a subpoena to appear before the grand jury when he came to the office of the United States Attorney seeking a property release of his truck. The truck, described as a "van", had been impounded by police officers when it was found disabled on a street. At the time it was occupied by two other persons. The officers observed a motorcycle in the cargo area of the van. It was then learned that the motorcycle had recently been stolen. As a result, the occupants of the van were arrested and both vehicles were impounded. Ownership of the van was discovered to be in appellee. A few days later, after a message had been left at his home by an investigating officer, appellee went to the Metropolitan Police Department, Auto Theft Section, to recover his van. His explanation of how the motorcycle came to be in the van, and the van to be in the possession of its then-occupants, was that he had picked up a "hippy" who loaded the disabled cycle in the van. Later, when the van

---

* Retired as of April 14, 1974.

1. D.C.Code 1973, § 23-104(c).

broke down and appellee went for help, the "hippy" left never to be heard from. The two who were arrested, according to appellee, were his friends who responded to his call for help. The police officers reasonably considered appellee's explanation to be so farfetched that he became a suspect. The van was not released to appellee by the Auto Theft Section, so he then went to the United States Attorney's office seeking a release. An Assistant United States Attorney likewise did not believe appellee's explanation, and, although he did release the van, he handed appellee the subpoena believing he would not otherwise return to testify. Appellee was considered to be a potential defendant.

At no time was appellee told that he was considered a potential defendant in a prosecution connected with the theft of the motorcycle. Indeed, he was only told that he was needed as a witness in prosecuting the two who were occupants of the van at the time of its impoundment. When appellee appeared pursuant to the subpoena, he was taken before the grand jury without being apprised of his rights including the fact that he was considered a potential defendant.

■ In the presence of the grand jury, appellee was advised of his rights in a manner correctly characterized by the trial court judge as inadequate. The deficiency in that advice arises from failure to maintain a scrupulous concern that waiver must be knowingly and intelligently made.[2] We are in agreement with the trial court judge that the most significant failing of the prosecutor was in not advising appellant that he was a potential defendant. Another shortcoming was in the prosecutor's waiting until after administering the oath in the cloister of the grand jury before undertaking to furnish what advice was given. This manner of proceeding is specifically condemned by Standard 3.6(d) of the ABA Project on Standards for Criminal Justice, The Prosecution Function, which states:

> If the prosecutor believes that a witness is a potential defendant he should not seek to compel his testimony before the grand jury without informing him that he may be charged and that he should seek independent legal advice concerning his rights.

The order, insofar as it suppressed appellee's grand jury testimony as trial evidence, is therefore affirmed. Jones v. United States, 119 U.S.App.D.C. 284, 290–291, 342 F.2d 863, 869–870 (1964). See United States v. Luxenberg, 374 F.2d 241, 246 (6th Cir. 1967); cf. United States v. Scully, 225 F.2d 113 (2d Cir. 1955).

ʽThere remains the question whether the effect of the suppression order goes to the validity of the grand jury proceeding and the indictment. At the end of the hearing, the trial court judge stated that he was going to examine the grand jury testimony to "determine whether or not there is sufficient evidence . . . to sustain the indictment independent of this witness' testimony." In his subsequent order, the judge held that "in the absence of this defendant's testimony . . . no competent evidence exists upon which the grand jury could rely in properly returning the instant indictment . . . ." It is thus clear that the trial court viewed the effect of its suppression order as, in contemplation of law, expunging appellee's testimony from the grand jury transcript thereby leaving an inadequate predicate for the indictment. We hold this view of the suppression order to be error in light of United States v. Blue, 384 U.S. 251, 255, 86 S. Ct. 1416, 1419, 16 L.Ed.2d 510 (1966). There the Court held:

> Even if we assume that the Government did acquire incriminating evidence

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Cf. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. While the general common-law practice is to admit evidence despite its illegal origins, this Court in a number of areas has recognized or developed exclusionary rules where evidence has been gained in violation of the accused's rights under the Constitution, federal statutes, or federal rules of procedure. . . . Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book.[3] [Footnote and citations omitted.]

Of more recent date this concept of grand jury function and independence has been even more solidified. *See* United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 619, 623, 38 L.Ed.2d 561 (1974); United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L. Ed.2d 67 (1973). *Calandra* reinforces *Blue* in its holding that evidence suppressible at trial may, in any event, be presented to a grand jury without fatally infecting the indictment.

We recognize that in *Blue* the grand jury was not the site of the constitutional deprivation. This fact does not appear of legal significance, for the Court also addressed that issue by a pointed and signifi-

cant comment respecting "tainted evidence . . . presented to the grand jury." It was said in *Blue* that in the event such taint be found *in* the grand jury proceeding,

> our precedents indicate this would not be a basis for abating the prosecution pending a new indictment, let alone barring it altogether. See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397; Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321; 8 Wigmore, Evidence § 2184a, at 40 (McNaughton rev. 1961). [*Id.* 384 U.S. 255 n. 3, 86 S.Ct. at 1419.]

Of course, appellee's testimony before the grand jury was tainted for it is the immediate product of constitutional violation.

Appellee argues that on these facts we should apply the usual review standard when considering discretionary action of the trial court, *i. e.,* abusive exercise. He relies on two cases from this jurisdiction for the proposition that dismissal of an indictment for lack of evidentiary basis is permissible, Jones v. United States, *supra,* and discretionary, Carrado v. United States, 93 U.S.App.D.C. 183, 188, 210 F.2d 712, 717 (1953).[4] We observe, first, that *Carrado* was decided in 1953 and since that time the Supreme Court has adopted in numerous cases "a very broad rule relating to the sufficiency of evidence supporting an indictment." Coppedge v. United States, 114 U.S.App.D.C. 79, 82, 311 F.2d 128, 131 (1962). As Judge (now Chief Justice) Burger observed in Coppedge, Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2

---

3. The fact that the prosecution in *Blue* had been ended and the accused exculpated played no part in the Court's holding "[o]n the merits of the case" (384 U.S. at 254, 86 S. Ct. at 1419). That factual aspect was critical to the then criminal appeals statute limiting government appeals to decisions "sustaining a motion in bar". *See* United States v. Blue, *supra* at 253 n. 2, 86 S.Ct. 1416. That fact was of jurisdictional significance only since in note 3 (*id.* at 255, 86 S.Ct. at 1419) the Court said, " . . . our prece-

dents indicate this would not be a basis for abating the prosecution *pending a new indictment,* let alone barring it altogether." (Emphasis supplied.) Thus, the Court expressly went beyond the peculiar jurisdictional facts in *Blue* to make its holding cover cases where a new indictment was possible.

4. Appellee also relies on Truchinski v. United States, 393 F.2d 627, 632 (8th Cir. 1968); United States v. Tane, 329 F.2d 848, 853 (2d Cir. 1964).

L.Ed.2d 321 (1958), stood for the often quoted principle that:

"[A]n indictment returned by a legally constituted nonbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment." [Coppedge v. United States, *supra*, 114 U.S.App.D.C. at 82, 311 F.2d at 131.]

Numerous decisions of the Supreme Court before and after *Lawn* attest to the proposition that this principle is not intended to be confined to the particular facts of a given case. *See* United States v. Calandra, *supra*; United States v. Dionisio, *supra*; United States v. Blue, *supra*, 384 U.S. at 255 n. 3, 86 S.Ct. 1416; Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Holt v. United States, 218 U.S. 245, 248, 31 S.Ct. 2, 54 L. Ed. 1021 (1910). Indeed, *Calandra* holds that "the validity of an indictment is not affected by the character of the evidence considered." *Id.*, 94 S.Ct. at 618. Respecting the power of a grand jury to act, it was observed in *Dionisio* that "jurors may act on tips, rumors, evidence offered by the prosecutor, or their own personal knowledge." 410 U.S. at 15, 93 S.Ct. at 772.[5] *Lawn* and *Costello,* when read in light of United States v. Dionisio, *supra* at 17, 93 S.Ct. 764, also forbid "preliminary trial[s] to determine the competency *and adequacy* of the evidence before the grand jury." Lawn v. United States, *supra* 355 U.S. at 349, 78 S.Ct. at 318 (emphasis supplied).

Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. . . . [United States v. Dionisio, *supra*, 410 U.S. at 17, 93 S.Ct. at 773.]

To permit this indictment to be challenged for inadequate evidence and require the grand jury to reconsider the matter would surely impede and frustrate the administration of the criminal laws.[6]

This body of decisional law has likewise eroded so much of the *Jones* decision (Part VI) as may be read to permit inquiry into the evidentiary basis of the indictment. In any event, it is apparent that the resulting inquiry in *Jones* into the existence of evidence supporting the indictment independent of the accused's grand jury testimony was based on factors making that case quite distinguishable from this one. While

5. We recognize that *Dionisio* and Branzburg v. Hayes, 408 U.S. 665, 701, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), on which this passage is based, dealt with grand jury investigation and the gathering of evidence. However, as revealed by the reliance on Costello v. United States, *supra*, 350 U.S. at 362, 76 S.Ct. 406, in *Branzburg*, it is apparent that the Supreme Court had in mind both the investigatory function and "instituting criminal proceedings . . . . In fact, grand jurors could act on their own knowledge and were free to make their [own] *presentments* or *indictments* on such information as they deemed satisfactory." Costello v. United States, *supra* at 362, 76 S.Ct. at 408 (emphasis supplied).

6. The Advisory Committee Note to Rule 9 of the Proposed Amendments to the Federal Rules of Criminal Procedure, April 23, 1974, is consistent with the foregoing. The proposed amendment contemplates issuance of a summons instead of a warrant upon charge by indictment or information. However, a warrant may issue if "the government presents a valid reason therefor." The Advisory Committee Note states:

If the government requests a warrant rather than a summons, good practice would obviously require the judge to satisfy himself that there is probable cause. This may appear from the information or from an affidavit filed with the information. Also a defendant can, at a proper time, challenge an information issued without probable cause. [H.R.Doc. No. 93–292, 93d Cong., 2d Sess. 25 (1974).]

This statement is preceded by the familiar axiom: "The indictment itself is sufficient to establish the existence of probable cause." It is thus apparent that the proposed rule does not contemplate overturning such well-established notions respecting an indictment. The proposed rule only permits such an inquiry respecting facts underlying an information.

a six-judge majority directed such inquiry on remand there was no majority rationale except to use supervisory power because of "extraordinary" disregard of Short's "situation" and "customary practice". This supervisory exercise of power was a "sanction" because Short, who had been arrested, was brought from jail to reaffirm before the grand jury an earlier illegal confession without notice to his appointed counsel. Although it is doubtful that this court is bound by an earlier ad hoc punitive exercise of supervisory power by the court in *Jones,* this case is factually so different that *Jones* would not control it in any event.

We also observe that appellee's motion to dismiss relied almost exclusively on the following quotation from Judge Edgerton's opinion in Jones v. United States, *supra,* 119 U.S.App.D.C. at 292–293, 342 F.2d at 871–872.

> Since an indictment obtained in violation of federal constitutional rights must be dismissed, at least where substantial prejudice resulted, the violations of Short's privilege against self-incrimination and of his right to the assistance of counsel make it necessary to dismiss the indictments against him. *This is quite independent of the fact that his written confessions, which were read to the grand jury, were obtained in violation of the McNabb-Mallory rule.* [Footnote omitted; emphasis supplied.]

The motion stated that the foregoing quotation was a conclusion of "the Court" as to "the proper remedy." The motion was misleading. That portion of the *Jones* opinion from Part V is not a holding or conclusion of the majority, but only a statement subscribed to by the author and three others. As observed, those four judges agreed with two others in Part VI

in order to obtain a majority "in . . . disposing of the dismissal matter". *Id.* at 294, 342 F.2d at 873.[7]

■ Appellee's assertion (Brief at 34) that the trial court had discretion to dismiss this indictment is too broad. Authority of the trial court to go behind an indictment is quite limited and discretion thereunder must be exercised only in rare instances consistent with recognized independence of a grand jury. An indictment may be dismissed under Federal Rule of Criminal Procedure 6(b) and Superior Court Criminal Rule 6(b) for infirmity in grand jury composition. In the discretionary sphere, an indictment may be dismissed if not speedily presented. *See* Fed.R. Crim.P. 48(b); Super.Ct.Crim.R. 48(b). If a variance between the trial proof and the charge becomes apparent the court must look to determine whether the indictment returned is the one voted on the evidence presented. *E. g.,* United States v. McBride, 498 F.2d 683 (D.C. Cir., 1974). *See also* Gaither v. United States, 134 U. S.App.D.C. 154, 413 F.2d 1061 (1969), where a procedural irregularity in voting the indictment left doubt that the indictment returned was the one intended.

■ Except in situations as above, the indictment speaks for itself. The Fifth Amendment right not to be charged but by indictment of a grand jury is not assured by permitting a general inquiry whether a legally sufficient case was presented. That right is not a right to be indicted for a legally sufficient case, for sufficiency of the evidence is a trial question and not one for pretrial resolution.

■ We, therefore, are not evaluating trial court action under the familiar but rigid axiom that discretionary action cannot be upset save for an abuse of that dis-

7. Even the authority relied on by Judge Edgerton (Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950)) concededly did not support his view that dismissal of the indictment is an accepted remedy. That case dealt with an unconstitutionally constituted grand jury and in such cases the remedy is clear and provided by law. *See* Fed.R.Crim. P. 6(b).

cretion. If that standard of review were to be applied we would be obliged to look to all circumstances of the case and decide whether the grand jury should be required to reconsider indicting appellee without his testimony.[8] The issue presented here is whether the grand jury evidence was to be quantitatively viewed without considering appellee's testimony because of the suppression order. United States v. Blue, *supra,* answers in the negative and is reinforced by the recent Supreme Court decisions attesting to the nature and independence of federal grand juries. *See* United States v. Calandra, *supra;* United States v. Dionisio, *supra;* Bransburg v. Hayes, 408 U.S. 665, 700, 92 S.Ct. 2646 (1972).[9]

The order appealed from is affirmed in part and reversed in part and the case remanded with instructions to reinstate the indictment.

So ordered.

KERN, Associate Judge (concurring in part and dissenting in part):

Appellee, suspected by police and prosecutor of grand larceny and receiving stolen goods, was haled before the grand jury pursuant to its subpoena. Once he was in the presence of the jurors uncounselled, an Assistant United States Attorney read him the so-called *Miranda* warning from the standard form used routinely by the police department when making arrests. Appellee acknowledged the warning, signed the waiver on the back of the form, proceeded to testify and was thereafter indicted. The trial court found invalid this purported waiver of his right against self-incrimination on the ground that the warning appellee had received was inadequate and therefore his waiver was neither intelligent

nor knowing. The majority upholds this finding and I concur.

The trial court, after reading *in camera* all the testimony before the grand jury, also found, and the majority does not disagree, that:

> [I]n the absence of . . . [appellee's] testimony before the Grand Jury, no competent evidence exists upon which the grand jury could rely in properly returning the instant indictment. . . .

The trial court then dismissed the indictment, presumably exercising its discretion in reliance upon the applicable case law in this jurisdiction, Jones v. United States, 119 U.S.App.D.C. 284, 290–291, 342 F.2d 863, 869–870 (1964). *See also* United States v. Tane, 329 F.2d 848, 853 (2d Cir. 1964).

The majority opinion overturns the trial court's dismissal, stating (at 102):

> To permit this indictment to be challenged for *inadequate evidence* and require the grand jury to reconsider the matter would surely impede and frustrate the administration of the criminal laws. (Emphasis added.) (Footnote omitted.)

With all deference, to describe the evidence here merely as "inadequate" is itself inadequate; the evidence was extracted by the grand jury in violation of appellee's Fifth Amendment right. To permit a grand jury to violate appellee's constitutional privilege by first improperly obtaining from him incriminatory evidence *and* then proceeding to indict on that evidence *alone* is scarcely consistent with or conducive to the proper administration of the criminal laws in this jurisdiction.

8. In that event the grand jury would have substantially the same evidence presented to it.

9. It would, of course, be a different situation if appellee, before testifying, had instituted proceedings to quash the summons on consti-

tutional grounds, or claim his Fifth and Sixth Amendment rights. *See* United States v. Calandra, *supra,* 94 S.Ct. at 619. This is the thrust of statements from *Calandra* and *Dionisio* on which the dissent places too broad a significance.

The case cited by the majority in concluding that this indictment, which rests *only* upon appellee's testimony to the grand jury, support in my view the trial court's dismissal rather than the majority's conclusion. They reiterate the constraints that exist on actions by the grand jury—that body which the Supreme Court has characterized as "the grand inquest." Hendricks v. United States, 223 U.S. 178, 184, 32 S. Ct. 313, 56 L.Ed. 394 (1912). Thus, in United States v. Dionisio, 410 U.S. 1, 11, 93 S.Ct. 764, 770 (1973), the Court stated:

> This is not to say that a grand jury subpoena is some talisman that dissolves all constitutional protections. *The grand jury cannot require a witness to testify against himself.* . . . (Emphasis added.)

In United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), the Court pointed out:

> Of course, the grand jury's subpoena power is not unlimited. It may consider incompetent evidence, but *it may not itself violate a valid privilege,* whether established by the Constitution, statutes, or the common law. . . . (Emphasis added.) (Footnote omitted.)

In United States v. Blue, 384 U.S. 251, 254, 86 S.Ct. 1416, 1418 (1966), upon which the majority lays particular stress, the Supreme Court considered an order by the trial court that, if upheld, would have *ended* the criminal case and exculpated the defendant rather than an order that merely "abate[d] the prosecution on account of some normally curable defect." Here, it is not suggested that the trial court's dismissal in this case, if affirmed, would preclude a new charge and further prosecution of appellee. Also the evidence challenged in *Blue* had not been acquired as a result of the grand jury's *own* action as is the case here.[1]

I view the facts of the instant case as unusual, occurring as the result of an isolated and unlikely-to-be-repeated prosecutorial aberration. Consequently, these unique facts remove this case from the usual rule that an indictment resting upon *some* incompetent evidence cannot be challenged if facially valid. Accordingly, I would affirm the trial court in all respects.

1. The Court in *Blue* stated in dicta that dismissal of the indictment in that case would not have been justified even had the tainted evidence been presented to the indicting grand jury. United States v. Blue, *supra* at 255 n. 3, 86 S.Ct. 1416. This is to me simply a restatement of the accepted rule that an indictment is not invalid because it is based on *some* incompetent evidence. *See* Coppedge v. United States, 114 U.S.App.D.C. 79, 311 F. 2d 128 (1962). The question here, on the other hand, is whether an indictment may be sustained when it is based *wholly* on illegally obtained evidence. The trial court concluded in the negative and I quite agree.