John E. ADAMS (Nos. 81–606 & 82–824), Appellant,

v.

UNITED STATES, Appellee.

Curtis L. OESBY, a/k/a Lawrence E. Staton (No. 81–620), Appellant,

v.

UNITED STATES, Appellee.

Nos. 81–606, 82–824 and 81–620.

District of Columbia Court of Appeals.

Argued May 25, 1983.

Decided Sept. 2, 1983.

David Carey Woll, Rockville, Md., appointed by this court, for appellant Adams.

Charles W. Halleck, Washington, D.C., for appellant Oesby.

Bruce A. Peterson, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, and Steven D. Gordon, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before KERN and BELSON, Associate Judges, and PAIR, Associate Judge, Retired.

KERN, Associate Judge:

On February 26, 1981, appellants John Adams and Curtis Oesby were found guilty by a jury of assorted charges arising from the killing, burglary, and attempted robbery of Frances Akers.[1]

There was evidence that appellants and Thomasine McKay left Adams' apartment on November 1, 1979, purportedly to sell some clothing McKay had stolen and to buy heroin. (Record at 584, 856.)[2] Akers allegedly wrote numbers and sold small quantities of phenmetrazine. As they drove past Akers' house, Adams said that he was "going to take that joint off." (Record at 587.) McKay and Adams exited the car and entered Akers' house. A short time later, after parking the car, Oesby approached the door and attempted to enter. (Record at 588.) While Akers was talking to Oesby at the door, Adams came up behind her and shot and killed her. (Record at 590–91.) (Adams maintained in his defense that Akers was interested in buying his gun and that while he was showing it to Akers it went off accidentally, killing her.) (Record at 861–62.)

Once Akers had been shot, Adams admitted Oesby and together they searched the house. (Record at 593–95.) Adams confronted Akers' 15-year-old grandson, Lawrence Michael Branch, and instructed Branch and a young cousin to sit on the living room couch with their heads held down. (Supp. Record III at 89, 90, 96.) Adams took a small bag of phenmetrazine from Akers' body and the three left. (Record at 595; Supp. Record III at 102–03.) Outside of the Akers' house appellants encountered Sherman Marshall. Sherman, who knew appellants by their respective nicknames, was instructed to turn around and appellants and McKay left. (Record at 269–82.)

At trial, the government relied on the testimony, among others, of McKay, who had originally been charged with appellants but then pleaded guilty to first-degree burglary and attempted robbery. Oesby did not testify and Adams presented the defense of accident. On appeal, Adams and Oesby challenge various rulings by the trial court, and Oesby challenges the sufficiency of the evidence to support his conviction and certain aspects of the sentencing of

---

1. Appellants were convicted of felony murder during a burglary while armed, D.C.Code §§ 22–2401, –3202 (1981); felony murder during an attempted armed robbery, *id.,* first-degree burglary while armed, *id.,* §§ 22–1801(a), –3202; attempted armed robbery, §§ 22–2402, –3202; and assault with a dangerous weapon, *id.,* §§ 22–502. *Appellant Adams was also* convicted of carrying a pistol without a license, *id.,* § 22–3204.

2. The reporter's transcript dated February 18, 1981, will be referred to as "Record." The Supplemental Record dated August 6, 1980, will be referred to as "Supp. Record I." The Supplemental Record dated February 13, 1981, will be referred to as "Supp. Record II." The Supplemental Record dated February 17, 1981 will be referred to as "Supp. Record III."

appellants. Only several of these issues require extended discussion.[3]

Adams challenges the validity of the warrant upon which he was arrested and hence claims that it was error for the trial court to deny his pretrial motion that the gun seized during his arrest should be suppressed. Adams was arrested after a paid informant called Police Officer David Hayes and informed him that appellant Adams, who was wanted for murder under an arrest warrant, was in a green Chrysler with Virginia tags in the 3900 block of Wheeler Road, S.E., and that he was armed with a .45 caliber pistol. The informant, whose information had proved accurate in at least four previous instances, claimed personal knowledge of the presence of the weapon. (Supp. Record I at 377–85.)

A detective confirmed that an arrest warrant on an unrelated offense was outstanding for Adams, and Hayes proceeded to the location mentioned, saw a car matching the informant's description and stopped it. He testified that certain furtive movements were made by the driver as he was being pulled over to the curb. After the occupants got out of the car, the woman riding in the front with appellant Adams, the driver, placed her purse on the trunk of the car and a .45 caliber handgun slid out. Appellant was then placed under arrest. (Supp. Record I at 355–58, 367.)

■ We do not reach Adams' challenge to the arrest warrant because we find, under the circumstances, that an investigative stop was appropriate and that probable cause to arrest Adams arose during that stop. The validity of the stop depends on the reliability of the informant's tip. We must evaluate the circumstances which show the informant to be credible and which led the informant to believe that a crime was being committed. *Rushing v. United States,* 381 A.2d 252, 254–55 (D.C. 1977). Because the informant in this case had an established record of supplying accurate information, we are concerned only with the basis of the informant's knowledge.

**3.** Appellants' other claims are without merit and can be disposed of in summary fashion.

Adams claims prejudice from the trial court's denial of his motion to sever or, alternatively, for a mistrial following Oesby's closing. The claim is based on the fact that Oesby's attorney, in essence, argued that the jury could find Oesby innocent whether or not they believed Adams. Any possible prejudice fails to satisfy the standard set out by *Rhone v. United States,* 125 U.S.App.D.C. 47, 365 F.2d 980 (1966).

Adams further challenges the trial court's failure to grant his motion for a continuance in order to proceed *pro se.* We will not upset a trial court ruling regarding a continuance absent clear abuse of discretion. *Poteat v. United States,* 363 A.2d 295, 296 (D.C.1976). Here, the trial court was prepared to allow Adams to represent himself and took steps to ensure that this could be done without prejudice to Adams, but denied the requested continuance. Upon this record there was no abuse of discretion.

Adams next claims ineffective assistance of counsel at trial. We are satisfied upon review of the trial that Adams' only substantial defense was thoroughly presented. The trial court's denial of such relief was entirely appropriate. *Angarano v. United States,* 312 A.2d 295 (D.C.1973).

Adams further objects that the trial court erred in denying his pretrial motion to limit his impeachment to the fact but not the nature of his prior convictions. The trial court properly rejected this claim. *Sweet v. United States,* 449 A.2d 315, 317 n. 1 (D.C.1982); *Hill v. United States,* 434 A.2d 422 (D.C.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982).

Oesby claims he was prejudiced by the introduction of a photograph of the lineup in which the witness Branch identified him. Because there was no objection, we will only reverse upon a finding of plain error. *Watts v. United States,* 362 A.2d 706 (D.C.1976) (en banc). Evidence that Oesby participated in a lineup, which carries no suggestion of a prior conviction, does not amount to plain error.

Oesby also complains that it was error for the trial court to refuse to instruct the jury on lesser included offenses as to Adams. Since *both* the government and Adams opposed such instructions, the trial court action was entirely appropriate under these circumstances.

Oesby asserts that he should not have been convicted of the separate offenses of attempted robbery while armed *and* assault with a dangerous weapon. Each offense clearly required proof of a fact that the other did not because the offenses were directed against different victims. Thus, the two convictions were proper. *Woody v. United States,* 369 A.2d 592 (D.C. 1977).

The record reveals that the informant claimed to have "personal knowledge" of the gun in Adams' possession. (Supp. Record I at 366.) There was further testimony that the informant was in the 3900 block of Wheeler Road, S.E., where the tip placed Adams. These factors, along with the detailed description of Adams' car, strongly suggest that the informant was acting on the basis of his observations.

That police action was called for in this case is clear given the fact that this was a rapidly moving street occurrence involving a dangerous weapon, not a report of future criminal activity or of activity posing no threat to the public. *Galloway v. United States,* 326 A.2d 803 (D.C.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). The police were able to verify certain aspects of the tip independently: the description of the car prior to the stop; and, after the stop but prior to approaching appellant, the furtive movements reasonably suggested some sort of criminal action consistent with the tip. *See United States v. Mason,* 450 A.2d 464 (D.C. 1982); *Lawson v. United States,* 360 A.2d 38 (D.C.1976) (cases in which actual searches for guns were upheld based on tips from informants and independent police confirmation of non-criminal details of the tips). For these reasons Adams' motion to suppress the seized pistol was properly denied by the trial court.

Appellant Oesby claims that the indictment charging him with the crimes of which he has been convicted should be dismissed on either of two grounds: that the 15-month delay between his arrest on November 16, 1979 and the beginning of trial on February 13, 1981 denied him his Sixth Amendment right to a speedy trial, and that the grand jury proceedings themselves were tainted by prosecutorial misconduct.

The trial court gave careful consideration to appellant's speedy trial motion and detailed the reasons for its denial in a *memorandum order.* We agree with the trial court that no Sixth Amendment violation occurred. We note that the trial court followed the standard used to evaluate speedy trial claims established by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). There, courts were directed to consider (1) the length of the delay, (2) the reasons for it, (3) the defendant's assertion of right, and (4) any prejudice to the accused.

Where, as here, the delay was more than one year, appellant has established a prima facie constitutional violation, *Branch v. United States,* 372 A.2d 998, 100 (D.C.1977), and the government must "convincingly outweigh" appellant's assertions of a Sixth Amendment rights' infringement in order to have the conviction upheld. *Day v. United States,* 390 A.2d 957, 970 (D.C. 1978). The more serious and complex the charges, however, the more able the government is to meet that burden. *Head v. United States,* 451 A.2d 615, 620 (D.C. 1982).

The first eight months of the delay in this case, until the first trial date, was normal delay inherent in the "proper and deliberate functioning of the judicial system." *Bowman v. United States,* 385 A.2d 28, 31 (D.C. 1978). This delay is basically neutral. *See Day v. United States, supra,* 390 A.2d at 966 (first 7½ months of longer delay termed "routine, normal".)

Of the next four months, about three weeks must be attributable to government unreadiness to proceed and the rest to the inability of attorneys for both the defense and the prosecution, and the trial judge, to find a mutually acceptable trial date. A short period of government unreadiness must not be weighed heavily in a case as complex as this one, *Head v. United States, supra,* 451 A.2d at 621, nor should a period of institutional delay caused by the necessity of a large number of attorneys having to coordinate their schedules with a busy trial judge. *United States v. Perkins,* 374 A.2d 882 (D.C.1977).

The final three-month delay resulted because Adams became unavailable and the government desired that the cases re-

main joined. Again, this must not weigh heavily against the government. Joinder of cases is favored, where appropriate, because it fosters efficient use of judicial and prosecutorial resources and decreases the burden on citizens who are called as witnesses. *Ready v. United States,* 445 A.2d 982, 985 (D.C.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983). Of the 15 months then, only the one three-week period was due to government unreadiness and none of the delay was attributable to an attempt by the prosecution to secure an unfair tactical advantage.

■ *Barker v. Wingo* also instructs that the court should consider whether the defendant asserted the right to a speedy trial. Oesby asserted it from the first continuance and this weighs in his favor. The final and decisive factor, however, is the prejudice resulting to Oesby from this delay. Three sorts of prejudice have been recognized by this court as supporting the right to a speedy trial: (1) undue and oppressive incarceration prior to trial, (2) anxiety over the charges, and (3) adverse consequence to the defense against the charges brought. *Day v. United States, supra,* 390 A.2d at 971. Oesby presented no defense in this case and would have been incarcerated anyway since he was awaiting trial on unrelated charges. While Oesby undoubtedly suffered anxiety as a result of the delay in coming to trial on these serious charges, its severity was reduced by the fact of his fairly extensive prior experience with the criminal justice system.

Employing the guidelines set out in *Barker v. Wingo,* we find that the balance of the evidence does support the trial court finding that appellant's Sixth Amendment rights were not violated.

Oesby urges dismissal of his indictment on the further ground that the prosecutor was guilty of abusing the grand jury process. The basis of this claim is that the prosecutor assertedly misled the grand jury in his presentation of certain testimonial evidence which led to a return of the indictment. The prosecutor asked several witnesses if they had made an identification at the lineup held prior to these proceedings. Each replied in the affirmative, but as a matter of fact only one of the witnesses had identified Oesby in the lineup. The prosecutor testified in the hearing held on his motion to dismiss the indictment that he had intended to bring this fact out by asking yet another witness, the police officer who had been present at the lineup, but had inadvertently neglected to do so.

■ Oesby complains that the government attorney handling the grand jury thereby acted in bad faith and violated his duty to reveal exculpatory evidence to the grand jury. The trial court, after the hearing on this motion, stated that it had been impressed by the candor of the attorney in explaining his oversight and ruled that there had been no bad faith. We will not substitute our judgment for that of the trial court. This case does not involve the clearly purposeful conduct of attorneys in cases cited by appellant in his brief. *United States v. Phillips Petroleum Co.,* 435 F.Supp. 610 (N.D.Okla.1977); *United States v. Gold,* 470 F.Supp. 1336 (N.D.Ill.1979).

■ Nor can we say that the testimony as to the failure of the two witnesses other than Branch to identify Oesby in the lineup was exculpatory. These witnesses had only a fleeting opportunity to observe the gunmen as they left the Akers' house after the shooting. On the other hand, the witness Branch was in the living room of the decedent's home with the appellants after the killing. His identification alone is sufficient to support the indictment. It is an accepted rule in this jurisdiction that we will not declare an indictment to be invalid because it is based on *some* incompetent evidence. *United States v. Washington,* 328 A.2d 98, 105 (D.C.1974) (Kern, J., dissenting in part), *rev'd on other grounds,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977); *Coppedge v. United States,* 114 U.S. App.D.C. 79, 311 F.2d 128 (1962), *cert. denied,* 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963).

Oesby's next contention is that the trial court erred in denying his motion to sever his case from Adams. The basis of the motion is Oesby's claim that testimony by Thomasine McKay that Adams stated in Oesby's presence, just prior to entering Akers' house, "Man, I'm going to take that joint off," was hearsay evidence as to Oesby. He urges that the court should have granted his motion because of the unavoidable prejudice the statement caused to his defense, or at least, that the court should have given an instruction limiting the jury's consideration of the statement to the implications it may have for Adams' actions only.[4]

█ We conclude this case is governed by *Byrd v. United States*, 364 A.2d 1215 (D.C.1976). There, one of two codefendants told a gas station employee that he would "get" the employee. Both defendants left, both returned, and the defendant who had made the earlier threat shot and killed the employee. Denying the codefendant's motion for severance, this court held that the statement by one codefendant in the presence of both was admissible against both to establish premeditation and deliberation for the charge of first-degree murder. *Id.* at 1220 n. 8.

Similarly, we hold that Adams' statement was admissible against both appellants and, specifically, was relevant to aid the jury in determining Oesby's intent when he let Adams and McKay out of the car he had been driving, parked that car, and then returned to Akers' house.

█ As to Oesby's objection that the evidence was not sufficient to support his conviction on each of the counts with which he was charged, we must determine, viewing the evidence in the light most favorable to the government, whether it was sufficient to enable a reasonable juror to conclude that appellant was guilty beyond a reasonable doubt. *Wooten v. United States*, 343 A.2d 281 (D.C.1975). Given the evidence that Oesby drove Adams to Akers' house; that both men brought guns; that Oesby heard Adams' statement, "I'm going to take that joint off," in reference to the Akers' house and then himself went to the door of Akers' house after Adams and McKay had entered; that he pushed against the door while Akers was inside her home and then entered himself; and, that Oesby searched through the house immediately after the shooting, the jury had ample evidence on which to make a reasonable determination that Oesby aided and abetted Adams in the crime of robbing the decedent and burglarizing her home. From this determination, conviction on the felony murder charge was appropriate.

█ Oesby's final contention relates to sentencing. He argues that he should not have been sentenced on the felonies of burglary and attempted robbery because these crimes underlay and merge into the felony murders. *Doepel v. United States*, 434 A.2d 449, 459 (D.C.), *cert. denied*, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981). We agree and order vacated the sentences imposed for burglary and attempted robbery. Oesby's further argument, however, that he should have been sentenced for only one murder is without merit. The course of action by Oesby here

---

4. Oesby relies for this argument on the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Appellant's reliance is misplaced because *Bruton* and the case before us are significantly different. In *Bruton* a statement inculpating *both* defendants was admitted at trial against one of the defendants who did not testify. The jury was instructed that it was hearsay as to the codefendant and could not be considered in determining his guilt or innocence. The Supreme Court held that because the statement was hearsay as to the codefend-

ant and of the likely prejudice to his defense, and because there was no opportunity to cross-examine the declarant, the codefendant's conviction must be reversed.

In this case, the challenged statement inculpated no one but Adams. It was not hearsay because it was not admitted for its truth, but merely to show Oesby's knowledge of the statement from which his intent in approaching Akers' house might be inferred. Adams also testified in this case, giving Oesby's attorney full opportunity for cross-examination. *See Byrd v. United States*, 364 A.2d 1215 (D.C.1976).

violated two statutory provisions requiring proof of different elements [5] for conviction. Therefore, two concurrent sentences are permissible. *Leasure v. United States,* 458 A.2d 726 (D.C.1983).

*Affirmed but remanded for sentencing in accordance with this opinion.*

---

**5.** Felony murder (burglary) requires proof of entry with criminal intent, D.C.Code § 22–1801, –2401 (1981), whereas felony murder (attempted robbery) requires proof of an attempt to take the property of another from his or her immediate possession. *Id.* §§ 22–2401, –2901.