**Phillip D. ROY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 85–1300.**

District of Columbia Court of Appeals.

Argued Feb. 12, 1987.

Decided June 23, 1987.

Richard K. Gilbert, Washington, D.C., appointed by the court, for appellant.

Larry R. Parkinson, with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, Michael D. Brittin, and Suzanne G. Curt, Asst. U.S. Attys., Washington, D.C. were on the brief, for appellee.

Before NEWMAN, ROGERS and STEADMAN, Associate Judges.

PER CURIAM:

Roy challenges his conviction for possession of controlled substances. He contends the trial court erred in denying his motion to suppress tangible evidence. The trial court, relying on *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held the seizure lawful. We reverse.

Darrell Hudson called a security guard at the General Accounting Office and re-

---

ported that he had been assaulted with a knife in room 1462 of that building. The security guard contacted her supervisor, Lieutenant Brown of Gilbert Security, and informed him of the report. Lieutenant Brown went to room 1462 and found five men seated around a table "like a card game." These men did not "respond" to Brown's questions about the incident. Brown detained the men in the room pending the arrival of a member of the Federal Protective Service.[1]

Officer Preston Holmes of the Federal Protective Service arrived at room 1462 approximately 20 minutes after Lieutenant Brown. He conferred with Brown, identified himself to the five men, and questioned them about the alleged assault with a knife. The men denied knowledge of any assault or the presence of any knife. Based on the report, the men's denial, and "the attitude projected by them," Holmes announced his intention to frisk each of them for a weapon. Roy was the last person to be frisked. The frisk of Roy is described in the government's brief as follows:

> Holmes patted down appellant's body, each of his arms, and each leg. As he reached the lower portion of the left leg, the first leg to be searched, Holmes felt a hard object which he believed to be a weapon (Tr. 8). He raised appellant's pant leg to reach the sock where the object had been hidden and retrieved it by a combination of sliding the object upward and reaching into the sock with his right hand to pull it out (Tr. 8, 34–35, 38–39). As Holmes passed the object to his partner to free his hands for completion of the patdown, he realized that it was a film canister.[2] The top fell onto the floor as Cherrod reached for the canister, revealing a substance that looked like marijuana (Tr. 9–10, 12, 35, 40). The canister contained "five little joints, little sticks" (Tr. 10). Cherrod immediately contacted the detective section to conduct a field test of the contents; results indicated the substance contained marijuana and PCP (Tr. 12).

[2] Holmes testified that he did not know at that time that the object was a film canister, and had not looked inside it, but merely handed it to his partner so that he could finish the patdown of appellant's other leg (Tr. 35–36, 40).

To justify a *Terry* pat-down for weapons, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.... And in making that assessment it is imperative that the facts be judged against an objective standard...." *Terry, supra,* 392 U.S. at 21, 88 S.Ct. at 1880.

Here, Brown and Holmes knew only that Darrell Hudson had reported that he had been assaulted with a knife by someone in room 1462. No description or other identification of the alleged assailant was given. Brown and Holmes found five men in that room. When these five men either refused to answer Brown's questions, or in the case of Holmes, denied any assault or the presence of weapons, they were all subjected to a frisk for weapons.

In addition to the absence of identification detail, indicative of reliability, *see Mitchell v. United States,* 368 A.2d 514, 516 (D.C.1977), no information was conveyed either to Brown or Holmes about the time of the assault. The government, which has the burden of proof, *see Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983), did not call the security guard as a witness, and other evidence did not establish either when the security guard had received Hudson's call or when Hudson claimed the assault had occurred. Thus, there was no evidence that the information about the assault was current.

Furthermore, when the officers arrived at room 1462, they found no evidence upon entering to corroborate that an assault had taken place. *See Allen v. United States,* 496 A.2d 1046, 1050 (D.C.1985); *Coleman v. United States,* 337 A.2d 767, 770–72 (D.C.1975). The sketchy evidence of the failure of the five men to cooperate with the police, moreover, cannot supply reasonable suspicion. *See Brown v. Texas,* 443

[1] The United States concedes that the Fourth Amendment applies to this detention.

U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *compare United States v. Barnes*, 496 A.2d 1040, 1045 (D.C.1985) (suspect's volunteered admissions to police that he "had no business" at store and had previously been arrested for armed robbery reinforced suspicion of criminal activity). Similarly, the government's reference to Roy's "attitude" is to no avail: Holmes referred to Roy's attitude toward Brown, which Holmes did not witness, and Roy's comments in Holmes' presence to the other men did not progress to actual resistance, flight or effort to hide anything. *Smith v. United States*, 525 A.2d 200, 203, 205–06 (D.C.1987) (Newman, J., dissenting); *see also Hinton v. United States*, 137 U.S. App.D.C. 388, 391–92, 424 F.2d 876, 879–80 (1969) (probable cause to arrest); *cf. Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) (search during execution of warrant to search premises); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Nor is there evidence of action by one of the other men which would constitute reasonable suspicion. *United States v. Johnson*, 496 A.2d 592, 597 (D.C.1985).

Finally, evidence justifying the detention of the five men for a period of at least 20 minutes is at best scanty. *Cf. United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). As mentioned, the security guard was never called as a witness, and testimony from the men as to what transpired preceding the security guard's decision to hold the men is inconclusive. No explanation is provided why the security guard could not have conducted the pat down himself. In short, while it is possible that the government might have presented evidence sufficient to justify the extended *Terry* stop pat-down, it did not do so here.

The United States contends that such cases as *Adams v. Williams*, 407 U.S. 143,

92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), *Adams v. United States*, 466 A.2d 439 (D.C.1983), and *United States v. Walker*, 294 A.2d 376 (D.C.1972), support the denial of suppression. Those cases are inapposite. In each of those cases, the information provided to the police included details and specificity about the identity of the alleged malfeasant. "[The] demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." *Terry, supra*, 392 U.S. at 21 n. 18, 88 S.Ct. at 1880, n. 18. It is the absence of such specificity, as well as the lack of other evidentiary support, which renders this pat-down unlawful.[2]

*Reversed.*

NEWMAN, Associate Judge, concurring:

This is a simple case decided wrongly by the trial court; it does not merit extended discussion. Unless we are to again countenance arrests for investigation in this city, *see Lawrence v. United States*, 509 A.2d 614, 618–19 (D.C.1986) (Newman J., dissenting), we must declare such dragnet detentions as occurred here constitutionally invalid. To sanction the pat-down of five persons on the unsupportable suspicion that one of them has committed a crime would be to write the Fourth Amendment out of our jurisprudence. What if there had been fifteen men in that room? What if there had been fifty? What if it had been RFK Stadium during a Washington Redskins football game?

---

**2.** Given our holding on this aspect of Terry, we need not address Roy's other contentions: (1) that a pat-down for weapons did not justify the seizure of the film canister (we note, however, that "[a] search for weapons in the absence of probable cause to arrest ... must, like any other search, be strictly circumscribed by the exigencies which justify its initiation," *Terry, supra,* 392 U.S. at 25–26, 88 S.Ct. at 1882); and (2) that the trial court erred in crediting the testimony of Holmes, in the face of all the evidence to the contrary, that the top of the film canister inadvertently popped off as he was handing it to his fellow officer.