UNITED STATES of America,

v.

John Harry BULLY.

Crim. No. 1057.

United States District Court
E. D. Virginia,
Newport News Division.

March 12, 1968.

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for plaintiff.

Robert G. Doumar, Norfolk, Va., for defendant.

## MEMORANDUM ORDER

KELLAM, District Judge.

John Harry Bully was indicted, tried and found guilty by a jury of grand larceny of three General Motors engines of a value in excess of $100.00. [Title 18 U.S.C.A. § 641.] In his motion for a judgment of acquittal, or in the alternative, a new trial, he complains of the following:

1. An alleged variance between the indictment and the proof, in that the indictment described three General Motors engines model number 3914, and the proof referred to model number 371.

2. There was no actual proof of the value of the engines.

3. The difference in the engines in possession of the defendant from those allegedly stolen from the Government.

4. There was no actual proof the engines in question were actually stolen.

5. There was no proof engines bearing model number 371 were stolen from the United States.

6. The Court erred in admitting testimony of one Stanley, concerning engines model number 371.

7. The Court erred in admitting documentary evidence, because contrary to the terms of a pretrial order of the Court.

8. The Court erred in admitting evidence of the date of delivery of the alleged engines (and fork lifts) because the Government's attorney had previously failed to designate such a date.

9. The Court erroneously admitted documentary evidence as to value of the engines.

10. The Court erred in admitting documentary evidence which had been altered.

11. That documents were admitted without proper proof from the actual custodian.

12. The Court erred in failure to admit past recorded testimony of a witness at another trial, when such witness refused to testify.

13. There was no proof of the value of the engines in question.

14. The Court erred in failure to charge the jury they must believe the engines in question were model number 3914.

15. & 16. The Court erred in the charge to the jury on the issue of aiding and abetting.

17. The Court erred in admitting hearsay testimony.

18. The Court erred in refusing to grant a motion for acquittal.

19. The Court failed to grant a new trial on after discovered evidence.

20. Errors in the general admission of evidence.

21. Alleged misstatement of the facts by government counsel in closing argument.

A transcript of the testimony was prepared and filed with the Court, after which the Court heard oral argument of counsel on the motion. In oral argument, counsel directed his attention solely to three questions, namely:

1. Failure to direct a verdict because of the alleged variance between the indictment and proof, in that the indictment described the engines in question as model number 3914 and the evidence referred to the engines as model numbers 371.

2. Failure to admit the previous recorded testimony of witness, Yokum, given at a hearing on another charge.

3. Error in admitting Exhibits numbered 3, 10, and 11.

Defendant was indicted for violation of Title 18 § 641 of the United States Code, which provides that "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any * * * thing of value of the United States or any department or agency thereof" where the value of the property is in excess of $100.00 is punishable by a fine not exceeding $10,000.00 and/or imprisonment of not more than ten years. " '[V]alue' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater." 18 U.S.C.A. § 641.

■ Viewing the evidence, facts and circumstances in the light most favorable to the Government, following the jury's finding the defendant guilty, and with the view of upholding the jury verdict if it is supported by the evidence, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Moore v. United States, 271 F.2d 564 (4th Cir. 1959); United States v. Luxenberg, 374 F.2d 241 (6th Cir. 1967), they establish the following situation. One Joseph Fulton Stanley and defendant were engaged in acquiring and obtaining property from the United States improperly and illegally (Tr. of Ev. pages 38-45). Considerable amounts of equipment were removed from government bases. It was sold to various parties—a dealer in Baltimore, the State of West Virginia and others. Stanley and defendant learned there were three pieces of equipment at Fort Belvoir which they wanted to acquire. Arrangements were made by Stanley (Assistant Post Quartermaster at Fort Eustis) to requisition the fork lifts on the pretense that they could be used as supply for repair parts at Fort Eustis. In such process some of the parts would be removed from the fork lifts and the remainder would be salvage material. Bully and Stanley felt they could use the surplus. Documents were prepared to requisition the fork lifts. At that time, Fort Eustis did not have equipment available to transport the fork lifts from Fort Belvoir. This was discussed with Bully who agreed to arrange for transportation, which he did through a trucking company, and paid the cost of the transportation. The requisition for the fork lifts was sent to Fort Belvoir with instructions to deliver them to the

truck sent by Bully. The truck picked up the fork lifts on Friday, April 29th.

Bully arranged to meet the truck driver who was en route from Belvoir to Eustis with the fork lifts and had him deliver them to a farm in Essex County, which farm he and Stanley were buying, and on which they had stored much equipment obtained from the Government. This meeting was without the knowledge or acquiescence of Stanley. When the fork lifts were delivered to the farm, Bully removed the General Motors engines from the three fork lifts, and then delivered the remainder of the fork lifts to Fort Eustis. Although the truck picked up the fork lifts and delivered them to the farm on Friday, the first fork lift was not delivered to Fort Eustis until the following Monday or Tuesday. Bully told Stanley he had removed the engines from the fork lifts and that he was going to use them in three cranes which were at the farm. Later Stanley saw the three engines at a service station which Mr. Bully operated, and at that time they were being loaded on a truck bearing Maryland licenses. Bully told Stanley he had sold the engines.

When Bully told Stanley he had removed the engines from the three fork lifts, Stanley then reminded him of the risk involved because "the documents that transferred these fork lifts listed the engines and engine serial numbers." (See Gov. Ex. No. 10). This last mentioned exhibit showed the cost price of the three fork lifts at $107,739.00, or $35,913.00 per unit.

The contract between the Government and the manufacturer of the fork lifts is Government Exhibit No. 5. Government Exhibit No. 2 is the purchase order from the manufacturer of the fork lifts (Pettibone Mulliken Corporation) to General Motors for the purchase of the three engines in question at $2213.92 each. The location and possession of the engines is traced from General Motors through various exhibits and testimony to the possession of Bully and to the sale by Bully of said engines.

■ Dealing now with the various objections of defendant set out in his Motion for Judgment of Acquittal or a New Trial (motion), several of the paragraphs deal with the same issue and may be considered together. In paragraphs 2 and 13, defendant claims the value of the engines is not shown. Government Exhibit No. 2 shows the cost of the engines at $2213.92 each. The statute, 18 U.S.C.A. § 641 (1966), provides that in determining whether the value is more than $100.00, the cost price of the article may be used.

■ In paragraphs 7 and 8, defendant complains of admission in evidence of certain documents, but does not specify the documents, except in paragraph 8 where he refers to a date when the fork lifts were delivered to Fort Eustis. An order was entered May 26, 1967, giving defendant's counsel the right to examine the records at Fort Eustis of the Property Disposal Officer and the Consolidated Supply Officer. The bill of particulars does not refer to any record of when the fork lifts were delivered at Fort Eustis. The request for a tracing of the property was answered by saying the information was not available at that time and would be furnished when available. There is nothing in the record to show this was not complied with.

■ Paragraph 9 of the motion deals with Government Exhibit No. 1, which was the Product Invoice of General Motors. It was struck from the record and the jury directed to disregard it (Tr. of Ev. page 222). In fact, it appears the exhibit in question was admissible pursuant to the provisions of 28 U.S.C.A. § 1732 (1966). In paragraphs numbered 10 and 11 of the motion, defendant complains of certain notations having been made on certain government exhibits. The reason for the notations and a full explanation was made to the jury. This all went to the weight the jury might give the document and not to its admissibility.

■ Defendant complains in paragraphs 15 and 16 of the motion of the

charge to the jury concerning aiding and abetting in the commission of a crime, and an alleged charge to the jury that "aiding and abetting could be done without the defendant knowingly aiding and abetting." A reading of the charge (Tr. of Ev. page 325) will show that the Court told the jury that in order to convict the defendant the jury must believe from the evidence beyond a reasonable doubt that he did "knowingly, willfully and feloniously steal, take and carry away, or aid and abet another or others in stealing", and further that in order to aid and abet another the accused must "willfully associate himself in some way with the criminal venture, and willfully participate in it", and an act is done "willfully" if done "voluntarily and intentionally."

 Paragraphs 17 and 20 deal with admission of alleged hearsay testimony and paragraph 21 with alleged improper argument of government counsel, but the motion did not, nor did counsel in oral argument, specify the basis of the objections. Objection 19 relates to alleged after discovered evidence, but no affidavit was filed or offer of proof made of the alleged after discovered evidence. Paragraph 18 complains of failure to grant the motion of acquittal.

 It appears the only remaining issues are those set out in paragraphs 1, 3, 4, 5, 6, and 14 of the motion, which paragraphs deal with the alleged variance between the indictment and proof, and argued in point one of the oral argument, and paragraph 12, relative to failure to admit in evidence prior testimony of witness Yokum, covered in point three of the oral argument.

The indictment described the three engines by engine numbers and by model numbers. The model number was given as number 3914. In testimony of witness Stanley (and others), he referred to the engines as model No. 371's. The evidence presented left no room for doubt as to what motors were involved. They were traced by the engine numbers assigned to the engines by General Motors, by the numbers assigned by the Government when placed in its stock, and by model numbers. Government Exhibit No. 5, which is the contract for construction of the fork lifts, refers to the engines to be used as GMC 3–71 diesel engines (371 means it is a three cylinder engine, 71 series), and Government Exhibit No. 5 refers to the engines in question as "model 3914." The motors are often referred to as model 3914 and as model 371, each being the same engines. Government exhibits refer to the engines as model 3914, and by engine numbers the same as the indictment, particularly Government Exhibit No. 2, which says the engines are three cylinder. Witness Stanley called the engines 371's. He testified that he saw the engines being loaded on a truck at Bully's service station; that Bully told him he had sold the engines; and that they came out of the fork lifts (Tr. of Ev. pages 24, 25, 26, and 67). The engines in question were fully identified by the testimony, and the jury has accepted the identification.

Lastly, defendant complains of the refusal of the Court to admit in evidence the testimony of Woodrow Yokum alleged to have been given at a hearing before a United States Commissioner at a time when defendant was charged with the larceny of three cranes.

 At the trial of the case at bar, defendant called as one of his witnesses, Woodrow Yokum. Yokum refused to answer questions on the ground the answers might tend to incriminate him. [Yokum had been indicted in West Virginia for some alleged violation of law dealing with acquisition or disposition of government property.] After Yokum refused to make answers to questions from defense counsel, counsel then offered in evidence as an exhibit the paper marked "Defendant's Exhibit A" which was refused. There are several reasons why the exhibit was not admissible. An inspection of the exhibit shows it to be merely 15 pages of typing, purporting to be testimony of Woodrow Yokum given at some hearing before

Commissioner Swink. It is not signed or authenticated by the Commission or the reporter,[1] nor was any proof offered as to its validity or authenticity. Annot., 15 A.L.R. 546, 561 (1921). Mattox v. United States, 156 U.S. 237, 244, 15 S.Ct. 337, 39 L.Ed. 409 (1895). The proponent of such evidence has the burden of establishing "the validity of the document containing the former testimony", Coppedge v. United States, 114 U.S.App.D.C. 79, 311 F.2d 128, 132 (1962). There is also another reason it is not admissible. It purports (without proof) to be testimony by Yokum given at a time of a hearing before a United States Commissioner, the date or place of which is not shown, when it is stated defendant was under charge with stealing three government cranes. It was stated to the Court that this charge, after finding of an indictment, was dismissed by the Government.

 The testimony of a witness given at a previous trial of a case may be admitted in evidence at a second trial where the witness has, subsequent to the first trial and prior to the second trial, died, or become incapacitated, or cannot be found, or refuses to testify because the testimony may incriminate the witness, when the parties are the same, and there has been a prior opportunity to cross-examine fully. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L. Ed.2d 923 (1965); Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L. Ed. 1150 (1900); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L. Ed. 409 (1895); United States v. Bentvena, 319 F.2d 916, 941 (2d Cir. 1963); Coppedge v. United States, 114 U.S.App. D.C. 79, 311 F.2d 128, 132 (1962); Christoffel v. United States, 91 U.S.App. D.C. 241, 200 F.2d 734, 743 (1952); Smith v. United States, 106 F.2d 726, 728 (4th Cir. 1939); Baldwin v. United States, 5 F.2d 133, 134 (6th Cir. 1925); Narum v. United States, 287 F.2d 897, 900 (U.S.Ct.Cl.1960); Smith v. State of Georgia, 147 Ga. 689, 95 S.E. 281, 15

A.L.R. 490 (1918); Commonwealth v. Gallo, 275 Mass. 320, 175 N.E. 718, 79 A.L.R. 1380; State v. Logan, 344 Mo. 351, 126 S.E.2d 256, 122 A.L.R. 417; State v. Ortego, 22 Wash.2d 552, 157 P.2d 320, 159 A.L.R. 1232; 29 Am.Jur. 2d Evidence § 738 (1967); Annot., 70 A.L.R.2d 494 (1960); Annot., 159 A.L.R. 1240 (1945); Annot., 79 A.L.R. 1392 (1932); Annot., 15 A.L.R. 495 (1921). There are differences of opinion among the various jurisdictions, but the better reasoning seems to hold that in order to admit the testimony of a witness at a former trial, the issues must be the same. 29 Am.Jur.2d Evidence §§ 745–746 (1967); Annot., 70 A.L.R.2d 494, 500 (1960); Annot., 159 A.L.R. 1240, 1246 (1945); Annot., 122 A.L.R. 425, 430 (1939); Annot., 79 A.L.R. 1392, 1402 (1932); Annot., 15 A.L.R. 495, 524 (1921). In this case the issue is not the same. It will be noted that the cross-examination was slight and only related to the larceny of cranes, not of General Motors engines.

At the time the Yokum testimony was given, Bully was charged with larceny of cranes. Here he is charged with larceny of three General Motors engines. What possible relationship the alleged testimony of Yokum set out in the alleged exhibit could have to do with this case is not shown. A reading of this exhibit shows:

(a) Bully called Yokum by telephone and asked him to pay a bill for transportation of some alleged equipment for the State of West Virginia. But Yokum said he never had any dealings with Bully for transportation of any such equipment, but made them with Stanley.

(b) Yokum told Bully West Virginia did not owe him any money.

(c) Yokum said there were no cranes involved.

(d) Yokum told Bully none of the equipment on the farm belonged to West Virginia.

1. The reporter was not a court reporter for the Court, but one privately employed.

(e) Yokum testified he never dealt with Bully on anything.

Where are the above facts pertinent to the issues in the case at bar? No mention is made of the General Motors engines or of any of the acts connected with them. Bully made no claim in his testimony that the engines were ever sold to Yokum, or in Yokum's possession, or for his account, or that Yokum even knew anything about the engines. Stanley testified he asked Bully to move equipment and store it for Yokum, but not General Motors engines (Tr. of Ev. pages 45–46–48). In fact, Bully never contended he had any conversation or arrangements with Yokum to move equipment for him or West Virginia, but said he was asked by Stanley to move equipment for Yokum (Tr. of Ev. 280).

Hence, even if the evidence was properly offered, it was not material, and even if it should otherwise have been admitted, it was not error to refuse its admission.

The motion is therefore overruled.