**UNITED STATES of America**

v.

**Nick DiPAOLO, Edward Weather, and Paul C. Snyder, Defendants.**

**No. 84 CR 75T.**

United States District Court, W.D. New York.

April 17, 1987.

Roger P. Williams, U.S. Atty., W.D.N.Y., Rochester, N.Y. by Jonathan W. Feldman, Asst. U.S. Atty., Ronald S. Carlisi, Rochester, N.Y., for defendant DiPaolo.

George W. Conaty, Jr., Rochester, N.Y., for defendant Weather.

Paul C. Snyder, pro se.

MEMORANDUM AND ORDER

PLATT, District Judge.

By notices of motion filed March 4, 1987, defendants DiPaolo and Weather moved for (i) an order pursuant to Rule 33, F.R. Crim.P., granting a new trial or (ii) an order granting a hearing on the motions. Both motions are based on an oral (on tape), unsworn, alleged "recantation" of JoAnn Barone's trial testimony made on July 16, 1986, by her to Charles Schiano, Esq., Weather's attorney on appeal.

On October 25, 1985, the defendants were convicted of conspiracy to intimidate witnesses and prevent communications to law enforcement officials of information relating to a Postal Service robbery, in violation of 18 U.S.C. § 371, and of the substantive crimes of using intimidation and physical force against Lucille Barone and her sister-in-law, JoAnn Barone, in violation of 18 U.S.C. § 1512.  DiPaolo was also convicted of criminal contempt of court under 18 U.S.C. § 401.

The following chronology is significant:

1. Defendants filed notices of appeal on January 6, 1986.

2. On May 16, 1986, JoAnn Barone's brother advised Mr. Schiano of JoAnn Barone's alleged "recantation."

3. On May 23, 1986, defendants' appeals were argued before the Second Circuit Court of Appeals and Mr. Schiano made no statement to that Court with respect to the alleged "recantation."

4. On July 16, 1986, JoAnn Barone gave her oral unsworn statement to Mr. Schiano and again he did not inform the Court of Appeals of the same, which at that point had the matter *sub judice.*

5. The Court of Appeals rendered its unanimous decision affirming the convictions and sentences on October 30, 1986. *United States v. DiPaolo,* 804 F.2d 225 (2d Cir.1986). Familiarity with this decision will be presumed.

6. As indicated above, these motions were not filed until March 4, 1987.

This Court will not restate the details of the vicious attacks on Lucille and JoAnn Barone by the defendants in their attempts to intimidate them. The rape of Lucille Barone and the carving up of JoAnn Barone's face with a screwdriver in the presence of her children are sufficiently described in the Court of Appeals decision. Moreover, "[w]hile not contesting the sufficiency of the evidence," 804 F.2d at 226, the defendants on appeal launched an attack on this Court claiming "seventy-seven specific instances" of misconduct by the Court during the course of the trial, all of which were rejected by the Court of Appeals. *Id.* at 231.

To put it mildly, this has been a bizarre case, and the present belatedly advanced unsworn, oral "recantation" of one of the victims has done nothing to diminish or alter this Court's perception of this matter. Quite apart from the virtual physical impossibility of JoAnn Barone's inflicting the wounds to her own face which are shown in photographs introduced into evidence at the trial, the motions herein reek of sham as evidenced by the following:

(1) By the time defendants' appeals were argued on May 23, 1986, before the Second Circuit, defendant Weather's attorney knew of the alleged "recantation" and failed to call it to that Court's attention on the oral argument even though, as that Court pointed out, defendants had no basis to contest the sufficiency of the evidence on appeal.

Moreover, Mr. Schiano made the alleged oral tape four months before that Court's decision and never called that to that Court's attention.

In addition, on August 19, 1986, his client, Weather, and DiPaolo were indicted and arraigned on the underlying postal robbery charge and again no mention was made of JoAnn Barone's alleged "recantation."

Furthermore, four months elapsed after the Court of Appeals' decision was rendered affirming the convictions, and no mention was ever made to any court or any authority of the alleged "recantation." It was not until March 4, 1987, some ten months after defense counsel first became aware of it, that either the Government, the Court, or anyone connected with the Government was ever notified that a material witness had allegedly recanted her trial testimony.

One of the requirements for relief pursuant to Rule 33 is that any "newly discovered" evidence be brought to the attention of the Court with "due diligence." In *United States v. Ochs,* 548 F.Supp. 502, 513 (S.D.N.Y.1982), *aff'd without opinion,* 742 F.2d 1444 (1983), the Court said:

> [W]hat is markedly deficient here … is the utter and complete failure of due diligence by or on behalf of movant since this 'new evidence' was discovered. Even assuming arguendo that this recantation occurred in October, 1980 … there is not a word of explanation as to why movant waited until November 12, 1981 to bring on the instant application. In this context, the enormous lapse of time … is fatal.

*Id.* at 513.

On this ground alone defendants' motions should be denied.

■ (2) The alleged "recantation" on tape, although transcribed, has never been initialed, signed or sworn to by JoAnn Barone. This renders the same insufficient to support a motion for a new trial pursuant to Rule 33. *See United States v. Ward,* 544 F.2d 975, 976 n. 2 (8th Cir.1976); *United States v. Johnson,* 142 F.2d 588, 592 (7th Cir.1944); *United States v. Bully,* 282 F.Supp. 327, 331 (E.D.Va.1968).

On this ground alone also, defendants' motions should be denied.

■ (3) The "recantation" is not in fact a recantation but a statement of lack of present recollection. In her oral statement, JoAnn Barone merely says that in July of 1986, "I don't even know [whether defendant DiPaolo was her assailant], I can't remember what happened that day." And "I mean as far as I knew I could have done those bruises myself for all I know [and that is why she does not believe it was DiPaolo]."

By way of contrast, on the day of the assault itself, April 15, 1985, at 6:30 p.m., JoAnn Barone told the investigating Rochester Police Officers that:

> Victim reports at above time, while she was standing in her yard playing with her children, suspect vehicle pulled up to the corner of Driving Pk. Ave. and Tacoma Street and stopped. At this time the passenger (suspect) in the vehicle got out and approached victim in her yard and grabbed her by her shoulders and turned victim around to be face to face. At this time suspect began to hit victim on the face with a screw driver (or object similar) and while hitting victim, suspect told victim that he was there in regards to Lucille and for victim to tell John (her husband) and his family to stay out of, we mean business, and that if victim did anything about this incident that he would hurt her children.

JoAnn Barone described the suspect as follows: "M—W—25 yrs.—5'7" Blk Hair (Short) Dark Comp.—Heavy Built—Jeans—White T-Shirt—Blk Jacket" and that the vehicle in which he arrived was "tan."

Four days later, on April 19th, under oath in an *ex parte* application made pursuant to 18 U.S.C. § 3148, JoAnn Barone testified before U.S. Magistrate David G. Larimer in pertinent part that she was testifying voluntarily and that on April 15, 1985, at approximately 3:00 p.m.,

> A car pulled up at the corner of Driving Park and Tacoma. A man got out, approached me, took my shoulder, turned me around.... He approached me, took my glasses off, quick like so I wouldn't recognize him too well, and told me to have my husband and his brothers keep out of Lucille's business. And then started to hit my face with the end of a screwdriver, and he was saying 'And this is to prove I mean business.' ... [H]e would hurt my two children if I were to tell anybody that he had been there.... That's who it was. It was Nick DiPaolo.... [And she didn't tell the police officer who it was] Because I was afraid that he would come back and hurt my children.

JoAnn Barone reaffirmed this testimony under oath on October 18, 1985, and during her trial before this Court and a jury on October 23 and 24, 1985. In the face of these sworn in-court statements, the unverified and unsigned oral "recantation" is insufficient and on this ground also alone, defendants' motions should be denied.

In addition to all of the foregoing, JoAnn Barone's trial testimony is, at least in part, corroborated by the affidavit of Peter Palumbo, a longtime friend of defendant DiPaolo, during the course of which he swore that on the day of the assault at approximately 3:00 p.m. the defendant DiPaolo was in the vicinity of JoAnn Barone's home as a passenger in a tan car wearing a light colored tee shirt, blue jeans and a black leather jacket.

Finally, this Court observed JoAnn Barone during the course of her testimony and questioned her at length. There was and is not the slightest doubt in this Court's mind that JoAnn Barone told the truth as best she recollected it to the jury during the course of the defendants' trial.

Defendants also renew their claim made before and rejected by this Court and by the Court of Appeals that the Government withheld information with respect to JoAnn Barone's drinking problem. This claim

having been thoroughly explored and considered requires no further discussion at this time.

As indicated above, defendants' motions are meritless and must be and the same hereby are denied.

As an apparent addendum to their motion, defense counsel "respectfully reserve[s] the right to make further and additional motions." As indicated in this opinion, defense counsel's tactics and antics in this case have left a lot to be desired. Defense counsel in a criminal case are expected to use their best efforts to defend the rights and present the cases of their clients vigorously. However, this does not entail improper and unwarranted attacks on courts and prosecutors, nor does it entail the filing of insufficient and unnecessary motions and indulging in improper practices. There are limits with respect to professional behavior and practice, and the counsel are reminded that they must observe the same.

Subsequent to the drafting of this Memorandum and Order this Court received a similar motion for a new trial on the same grounds from the remaining defendant, Paul C. Snyder. For the same reasons set forth above his motion also must be and the same hereby is denied.

SO ORDERED.