**UNITED STATES, Appellee,**

v.

**Richard LESPIER, Defendant–Appellant.**

**No. 06–4279–cr.**

United States Court of Appeals, Second Circuit.

Jan. 11, 2008.

---

Edward T. Kang, Assistant United States Attorney (Kevin J. O'Connor, United States Attorney for the District of Connecicut, William J. Nardini, Assistant United States Attorney, on the brief), for Appellee.

Paul F. Thomas, Assistant Federal Defender, New Haven, CT, for Defendant–Appellant.

PRESENT: Hon. RALPH K. WINTER, Hon. CHESTER J. STRAUB, and Hon. SONIA SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

Defendant Richard Lespier appeals from an order of the United States District Court for the District of Connecticut (Alan H. Nevas, *Judge)* denying Lespier's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 on the ground that a witness for the government, Luis Adorno, had recanted his trial testimony. We assume the parties' familiarity with the underlying facts and procedural history in this case.

Before a district court may grant a motion for a new trial under Rule 33 on the ground that a testifying witness recanted his or her testimony, the defendant has the burden of establishing the following: "(1) that the testimony recanted was false and material; (2) that without the original testimony[,] the jury probably would have acquitted the defendant; and (3) that the party seeking the new trial was surprised when the false testimony was given or did not know of its falsity until after the trial, and could not with due

diligence have discovered it earlier." *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir.1987) (internal citations omitted). Here, the District Court concluded that Lespier failed to satisfy both the first and second parts of the *DiPaolo* test. We review the district court's denial of a motion for a new trial for an abuse of discretion and accept the district court's findings of fact unless clearly erroneous. *United States v. Wong*, 78 F.3d 73, 78 (2d Cir. 1996).

In regard to the first part of the *DiPaolo* test, the District Court did not exceed its allowable discretion in concluding that Lespier had failed to meet his burden of proving that the Adorno trial testimony was false. Adorno had sworn an affidavit recanting his testimony, but he then repeatedly repudiated this recantation and reaffirmed his trial testimony before the District Court. We have instructed district courts to view even an *unrepudiated* recantation with the "utmost suspicion." *See Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir.2003) (internal quotation marks omitted). However, in contrast to our sister circuits, we have not definitively set forth the weight that a district court should accord to a repudiated recantation in this context. *See, e.g., Awon v. United States*, 308 F.3d 133, 141 (1st Cir.2002) (holding that a repudiated recantation is not "substantive evidence" that may serve as a basis for a new trial, but rather may only be used to cross-examine a witness at such a trial); *Lindsey v. United States*, 368 F.2d 633, 636 (9th Cir.1966) ("An unrepudiated recantation of trial testimony is not merely impeaching, but is substantial and material evidence ... because the new version will presumably be testified to at the new trial. But where the recantation

has itself been repudiated ..., the recantation becomes merely impeaching and could be used at a new trial only for the purpose of cross examining the witness, and not as substantive evidence." (internal citation omitted)), *cert. denied*, 386 U.S. 1025, 87 S.Ct. 1383, 18 L.Ed.2d 465 (1967).

We have, however, emphasized that a district court should give little evidentiary weight to a recantation affidavit that has since been repudiated. *See United States v. Gallego*, 191 F.3d 156, 166 (2d Cir.1999) (stating that a "recanted recantation ... can only be reviewed with extreme skepticism"), *cert. denied*, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Indeed, we have adhered to this view when confronted with a more convoluted series of recantations and repudiations than those that occurred here. In *United States ex rel. Rice v. Vincent*, 491 F.2d 1326 (2d Cir.1974), *cert. denied*, 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974), a co-defendant named Robert Barnes, Jr., testified at trial against the other co-defendants. *Id.* at 1330. Later, Barnes wrote to the mother of one of these co-defendants and claimed that the police had coerced his statements and coached him on what to say at trial. *Id.* at 1327, 1330. Barnes then repudiated this recantation and explained that he had written the letter because both he and his fiancé had been threatened. *Id.* at 1330. Over the next two years, Barnes gave substantially the same testimony at three separate trials.[1] *Id.* at 1327–28, 1330. At that time, Barnes contacted the attorney representing his four co-defendants, claimed that they were innocent, and signed two affidavits to the effect that the

---

1. For various reasons, the other co-defendants either won retrials after their convictions or hung juries. *United States ex rel. Rice v. Vincent*, 491 F.2d 1326, 1327–28 (2d Cir. 1974), *cert. denied*, 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974).

police coerced him into testifying and coached him regarding what to say. *Id.* at 1331. The only evidence that Barnes had repudiated his *second* recantation was an affidavit signed by an Assistant District Attorney to that effect. *Id.* Presented with such a history of vacillation by a key cooperating witness, we concluded:

> We are not reasonably well satisfied that Barnes' testimony at trial was false. Barnes gave essentially the same testimony at four trials before petit juries. Three of these trials occurred after an earlier recantation.

*Id.* at 1332. Here, Adorno made only one recantation and one repudiation, and it was clear in the District Court that Adorno sought to disavow any allegation he had previously made regarding the falsity of his trial testimony.[2]

As he did before the District Court, Lespier urges us to discredit Adorno's asserted reasons for recanting his trial testimony and then repudiating his recantation, thus treating the recanting affidavit alone as substantive evidence warranting a new trial. We agree with the District Court that "Adorno's stated reasons for recanting his trial testimony are as credible as Lespier's arguments that Adorno repudiated the affidavit to avoid future perjury charges." Although Lespier contends that the District Court exceeded its allowable discretion in reaching such a conclusion and not ordering a new trial, we have rejected precisely this argument. *See United States v. Troche,* 213 F.2d 401,

403–04 (2d Cir.1954) (holding that "[t]here was no abuse of discretion in denying the motion" for a new trial where "the reasons [the witness] asserted for having signed the recanting affidavit are at least as plausible as those asserted by" defendant). While it is possible that Adorno's now-repudiated recanting affidavit may have some evidentiary value, it lay within the discretion of the District Court to determine whether this evidence proved that Adorno's trial testimony was false.

On this issue, Lespier cites *Ortega v. Duncan,* 333 F.3d 102 (2d Cir.2003), for the proposition that a "district court err[s] when it relie[s] upon its credibility analysis [of a recantation affidavit] to reach the conclusion that because [the witness's] recantation was not believable, his testimony at … trial must have been truthful." *Id.* at 107. The District Court here recognized that it must give "proper weight to other evidence," if presented, but it also distinguished the facts surrounding Adorno's recantation and subsequent repudiation from those in *Ortega.* Unlike the witness in *Ortega,* Adorno repudiated his recantation, thus presenting the District Court with a recanting affidavit of different evidentiary weight. In addition, unlike the defendant in *Ortega,* Lespier presented no evidence other than this affidavit to prove Adorno's alleged perjury at trial, thus presenting the District Court with no other evidentiary basis for granting the Rule 33 motion. Properly considering the evidence presented "as a whole," the District Court properly concluded that Lespi-

---

2. Moreover, Lespier does not address the District Court's analysis of the extent to which three other testifying witnesses—Randall Pollack, Annette Boultron, and Erica Lopez—corroborated various aspects of Adorno's trial testimony. We agree with the District Court that such corroboration supports the conclusion that Adorno had not perjured himself when testifying at trial. *Cf. Ortega v. Duncan,* 333 F.3d 102, 107 (2d Cir.2003) (noting that absence of corroboration of the allegedly perjurious testimony as one of several reasons why the district court erred in denying defendant's Rule 33 motion for a new trial based upon recantation affidavit and other evidence), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000), *abrogated on other grounds by Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

er had failed to meet his burden by presenting only the Adorno affidavit and nothing else.

In any event, the District Court did not exceed its allowable discretion in concluding that Lespier had failed to meet his burden of proving that the jury probably would have acquitted Lespier in the absence of the Adorno testimony. *See United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir.1992) ("[M]otions for a new trial based on the identification of perjured testimony should be granted only with great caution and in the most extraordinary circumstances."). Indeed, Jose Reyes testified that he attended a Latin Kings meeting in which Lespier admitted to killing Alex Moreno. The District Court also relied upon incriminating statements Lespier made to a fellow inmate while awaiting trial, as well as Boultron's and Pollack's recollections of the events that occurred on the night of Moreno's murder. This testimony provided ample evidence for a jury to conclude, beyond a reasonable doubt, that Lespier was guilty of murder in aid of racketeering. *See id.* at 1415–16 (stating that a new trial is appropriate only where the evidence before the jury, other the perjured testimony, "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand").

In sum, we have considered all of Lespier's arguments in this appeal and find them to be without merit. For the foregoing reasons, we AFFIRM the order of the District Court.